IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:10-cv-00670

| | |
|---|---|
| ABIGAIL RIVERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| STORK HERRON TESTING ) | |
| LABORATORIES, Inc   and ) | |
| ) | |
| SAMUEL C. JACKINS, ) | |
| Defendants. ) | |
| ) | |

THE MATTER comes now before the Court upon Defendant Jackins' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) [D.I. 11] and Defendant Storks' Motion to Dismiss and to Strike pursuant to Federal Rule of Civil Procedure 12(b)(6). [D.I. 13]. The Court will address each of these motions in turn.

## I. LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the plaintiff's complaint. *See Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). When deciding a 12(b)(6) motion to dismiss, a court must "accept as true all factual allegations" presented in the complaint. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 589 (2007). In order to survive a 12(b)(6) motion to dismiss the plaintiff's complaint must contain more than mere legal conclusions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). A complaint must plead facts sufficient to "raise a right to relief above the speculative level" and to demonstrate that the claim is "plausible on its face." *Twombly*, 550 U.S. 544, 570 (2007). The claim is facially plausible when the factual content of

the complaint allows the court to "draw the reasonable inference that the defendant is liable for the misconduct." *Iqbal*, 129 S. Ct. 1937, 1949 (2009). Thus, if a complaint establishes a sufficient legal and factual basis for the claims asserted the motion to dismiss will be denied.

## II. FACTUAL BACKGROUND

Plaintiff Abigail Rivers ("Rivers") was employed by Defendant Stork ("Stork") beginning in July 2008. (Compl. ¶ 21). Defendant Jackins ("Jackins") was employed as the general manager of the Stork Charlotte facility and the direct supervisor of Rivers. (Compl. ¶ 16). Jackins' responsibilities included hiring, managing, and firing employees at Stork's Charlotte facility. (Compl. ¶ 17). Jackins was transferred to Charlotte from the Stork Philadelphia facility. (Compl. ¶ 18). Rivers asserts that Jackins immediate supervisor in Philadelphia transferred him as a result of Jackins' sexual harassment of women . (Compl. ¶¶ 19, 20).

Jackins allegedly made physical contact with Rivers by often standing so near to her that his body, "including his penis and groin area," would touch her. (Compl. ¶ 24). In August 2008, Rivers was sitting in the warehouse on break when Jackins walked up to her and rubbed the inner part of her right thigh. (Compl. ¶ 38). Jackins allegedly made comments such as telling Rivers to "wear something showing your breast," and discussing his sexual history with his ex-wife and others, including African-American women. (Compl. ¶¶ 23, 29, 31). Rivers, being African American, understood this to mean Jackins wanted to have sex with her. (Compl. ¶ 32). In August 2008, Jackins mimicked Rivers' manner of walking and commented "you have a nice ass." (Compl. ¶ 37). Jackins began throwing packing materials at her, which struck her chest, face, and head. (Compl. ¶ 42). In December 2008, Jackins pressured her to come to his house to have drinks and play pool. (Compl. ¶¶ 54, 55). Jackins asked if Rivers had "gotten any" and

stated she needed to "get some," referring to sex. (Compl. ¶ 62, 63). Jackins called Rivers a "wanker," meaning someone who masturbates. (Compl. ¶ 64). Jackins pointed to the word "vibrator" and stated "you've had some experience with that, huh?" (Compl. ¶ 66). Jackins stared at Rivers in a provocative manner while eating a banana. (Compl. ¶¶ 67-69).

Rivers alleges Jackins' harassment included a denial of benefits and mistreatment when she refused his sexual advances. After rebuffing Jackins, he changed her work schedule, forcing her to work later. (Compl. ¶¶ 26-27). Jackins told Plaintiff she needed to "kiss his ass" if she wanted a larger quarterly bonus and asked her "Who's your daddy?" (Compl. ¶¶ 74- 75). As a result of Jackins' treatment, Rivers claims to have suffered anxiety, depression, mental anguish and uncontrollable shaking and crying. (Compl. ¶¶ 77-79). Rivers was treated for depression and anxiety. (Compl. ¶ 88). Rivers alleges she sent an email to the president of the company regarding the inappropriate actions, but was ignored. (Compl. ¶ 82). Rivers called the head of Human Resources and an investigation was initiated. Jackins was terminated for "violating Company policy and standards" on April 9, 2009. (Compl. ¶ 85). Rivers was terminated by Stork on May 1, 2009. (Compl. ¶ 88). Rivers claims the inappropriate and unwelcome sexual advances of Jackins toward female subordinates were known by Stork management, who failed to take appropriate steps to investigate or discipline this misconduct. (Compl. ¶ 96).

### III. ANALYSIS

#### A. Defendant Jackins' Motion to Dismiss

As a preliminary matter, the Court need not discuss the portions of Jackins' Motion regarding Negligent Retention and Negligent Supervision as the Plaintiff has represented she is not pursuing those claims against him. (Doc. No. 15 Plaintiff Mem. Opp'n. at p. 12, ¶ 23).

Defendant Jackins challenges the sufficiency of Plaintiff Rivers' pleading for Intentional Infliction of Emotional Distress (IIED).  Under North Carolina law, a plaintiff has a valid claim for IIED when the plaintiff demonstrates "(1) extreme and outrageous conduct by the defendant (2) which is intended to and does in fact case (3) severe emotional distress." *Waddle v. Sparks*, 331 N.C. 73, 82, 414 S.E.2d 22, 27 (N.C. 1992); *Standback v. Stanback*, 297 N.C. 18, 254 S.E.2d 611 (N.C. 1979); *Guthrie v. Conroy*, 152 N.C. App. 15, 21, 567 S.E.2d 403 (N.C. App. 2002). Conduct is considered "extreme and outrageous" when the conduct is so extreme as to "go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Guthrie*, 152 N.C. App. 15, 21, 567 S.E. 2d 403, 409.  The allegations of "extreme and outrageous" conduct must consist of more than "mere insults, indignities, and threats." *Hogan,* 79 N.C. App. 483, 493, 340 S.E.2d 116, 123.  Courts in North Carolina have found actions such as a harasser rubbing or brushing the front of his body against a woman, intentionally placing a hand on a woman's leg, and continually making sexually suggestive remarks can constitute a claim for IIED.  *Hogan*, 79 N.C. App. 483, 490, 340 S.E.2d 116, 121; *Mullis v. Mechanics and Farmers Bank*, 994 F. Supp.680, 683 (M.D.N.C. 1997). Based on Plaintiff  Rivers' plausible allegations that Defendant Jackins stood so near to her that "his penis and groin area" touched her,  that he rubbed her inner thigh, and made consistent sexually suggestive statements to her and about her person,  the Complaint has satisfied the *Twombly* and *Iqbal* standard.

A tort claim for IIED must establish the plaintiff suffered "severe emotional distress" which may be characterized as any type of "severe and disabling" medical conditions which "may be generally recognized and diagnosed by professionals trained to do so." *Johnson v. Ruark Obstetrics and Gynecology Associates*, 327 N.C. 283,304, 395 S.E.2d 85, 97 (N.C. 1990);

*Soderlund v. Kuch*, 143 N.C. App. 361, 368, 546 S.E.2d 632, 637 (N.C. App. 2001); *Waddle*, 331 N.C. 73, 83, 414 S.E.2d 22, 27. Plaintiff Rivers pled she suffered anxiety, mental anguish, uncontrollable shaking and crying, and that she received treatment for depression and anxiety. These pleadings regarding her severe emotional distress are sufficient to satisfy the *Twombly* and *Iqbal* standard. Based on the foregoing, Defendant Jackins' Motion to Dismiss is denied but these issues may be revisited at a later phase of the litigation.

**B. Defendant Stork Motion to Dismiss**

Regarding Defendant Storks' Motion to Dismiss the claim of ratification by Stork of Defendant Jackins' conduct, the Court finds the determination of the legal sufficiency of the Plaintiff's claim of ratification should be deferred until the next dispositive stage of litigation after discovery and further development of the factual record. *See Flue-Cured Tobacco Co-op. Stabilization Corp. v. U.S. EPA*, 857 F. Supp. 1137, 1145 (M.D.N.C. 1994) ("This claim can be adjudicated more accurately after the parties have developed the factual record.").

The Plaintiff consented to Defendant Stork's Motion to Strike. That motion is hereby GRANTED.

For the reasons set out herein, the Motions to Dismiss are DENIED.

Signed: July 19, 2011

Graham C. Mullen
United States District Judge